COURT OF APPEALS OF VIRGINIA


Present:   Judges Beales, Powell and Alston
Argued at Richmond, Virginia


SHAQUILLA SHANELL BROWN

MEMORANDUM OPINION[*] BY
v.        Record No. 0001-09-2                   JUDGE CLEO E. POWELL
                                                 DECEMBER 22, 2009
COMMONWEALTH OF VIRGINIA


FROM THE CIRCUIT COURT OF PRINCE EDWARD COUNTY
Richard S. Blanton, Judge

Joseph S. Massie, III (Massie Law Firm, on briefs), for appellant.

Richard B. Smith, Special Assistant Attorney General (William C.
Mims, Attorney General, on brief), for appellee.


Shaquilla Shanell Brown ("appellant") was convicted of abduction to extort money for

pecuniary benefit, in violation of Code § 18.2-48, and use of a firearm during the commission of

a felony, in violation of Code § 18.2-53.1.  On appeal, appellant argues that the evidence was

insufficient to support her convictions.  Specifically, appellant challenges the credibility of the

Commonwealth's witnesses.  She also argues that the jury reached inconsistent verdicts in

finding her not guilty of abducting Rayvon Jordan while convicting her of abducting Christine

Green, that the evidence was insufficient to prove abduction because the alleged victims were

willing companions, and that the evidence is insufficient to prove abduction to extort money for

pecuniary gain because there could be no pecuniary gain where she demanded money that she

believed to be owed to her.


---

[*] Pursuant to Code § 17.1-413, this opinion is not designated for publication.

Before this Court will review an argument, the issue must properly be presented to us in the question presented. Rule 5A:12(c). Because appellant's question presented challenging the sufficiency of the evidence does not incorporate an argument that the jury reached inconsistent verdicts, we decline to consider that issue. Moreover, a review of the record indicates that appellant failed to preserve her argument that the alleged victims were willing companions. She does not ask this Court to invoke either the ends of justice or good cause shown exceptions to Rule 5A:18, and we will not do so on appeal. See Edwards v. Commonwealth, 41 Va. App. 752, 761, 589 S.E.2d 444, 448 (2003) (en banc) (holding that we may not invoke the ends of justice exception to Rule 5A:18 *sua sponte*), aff'd by unpub'd order, No. 040019 (Va. Oct. 15, 2004). Though appellant preserved her argument that the evidence was insufficient to prove pecuniary gain in the trial court, appellant fails to present any authority in support of this argument on appeal as required by Rule 5A:20(e). Thus, we decline to consider her argument. As to appellant's preserved argument that the Commonwealth's witnesses were incredible, we disagree and, for the reasons that follow, we affirm appellant's convictions.

## I. BACKGROUND

On the night of September 7, 2007 into the morning of September 8, 2007, Christine Green, appellant, and several others were playing cards and gambling in Green's trailer. Around 4:30 or 5:00 a.m., Green and appellant remained the only two still gambling. Appellant told Green that Green owed her $300. Green denied that amount but admitted that she owed appellant $80.

At some point during the conversation, Rayvon Jordan, Green's boyfriend, woke up to get ready for work. Michael Collins, appellant's husband, also came over to Green's trailer. As Collins and appellant stood in front of the living room door, appellant asked whether Green was going to give her the money. Green refused and ordered appellant and Collins to leave. In

response, appellant pulled a handgun from her purse and demanded her money. Jordan then stepped between appellant and Green.

Green had previously played a card game with appellant where appellant pulled out a knife at the end of the game. Green thought that appellant was a very dangerous person who might kill her.

After appellant pulled her handgun and demanded the money, Green suggested that they go back to the bedroom. She and Jordan went to the bedroom, followed by appellant and Collins. Green entered the bedroom and grabbed her purse. Though she had money in her purse, she did not give it to appellant because she did not believe that she owed appellant money. At this time, appellant had the gun in her hand near her waist. Green next led appellant to her brother Michael's room, where he and Green's four-year-old daughter were sleeping. Green turned on the light and asked her brother for money. Green looked in her brother's pants pocket and under his mattress for money but found none. Michael saw appellant's gun, and he removed Green's daughter from the room. Green then asked Jordan if he had any money, and he said that he did in his pants pocket in the bedroom. Green told Jordan to get the $100 that he had and give it to appellant. While Jordan returned to the bedroom to get the money, appellant remained in Michael's room with Green.

After receiving $100, appellant continued to demand the rest of the money. During this commotion, Stephanie, Green's sister, awoke from where she was sleeping in the living room and approached the women. Stephanie told appellant that she should not speak to Green like that. Appellant then pointed the gun at Stephanie and told her to "get back." Stephanie retreated to the living room where her children were sleeping. She and Michael then left the trailer with the children.

Appellant, who was still holding the gun, told Green and Jordan that they all needed to leave because she feared that Green's siblings would call the police. Appellant ordered them into her husband's car and, with her husband driving, followed Green's suggestion that they go to an ATM to retrieve money. Collins and Jordan rode in the front seat of the car while Green and appellant sat in the backseat.

The foursome went to a bank in Farmville where appellant instructed Collins to drive close enough to the ATM that Green would not have to get out of the car. When Collins failed to maneuver the car close enough to the ATM, Green exited the vehicle and stood at the ATM. She attempted to use a gift card as an ATM card, knowing that it would not work. Green did not actually have an ATM card; she simply wanted appellant away from her house. During Green's "attempts" to obtain money, she asked Jordan to get out of the car to help her. Once he was out of the car, she asked him what they should do next and he said that he did not know. Green suggested that they run away, and Jordan objected because they were too close to appellant and she would be able to shoot them before they escaped. They then got back into the car and told appellant that the ATM card was old and did not work.

Green then suggested that they go to the home where her aunt, Linda Haskins, lived to see if Haskins had money. Before going to the home, appellant attempted to use Collins's cell phone, with the feature that blocks the caller's phone number enabled, to call Haskins, but the call did not go through because Haskins did not accept calls from anonymous numbers. Appellant then had Collins drive to a nearby CVS so that Green could use the pay phone to call her aunt. When they arrived at the CVS, Green approached the pay phone and appellant followed her. Green called her aunt and asked her aunt for money, but Haskins refused. In an effort to give Haskins the impression that something was wrong, Green told her that she would

be right over to get the money. Green did not call 911 at this time because she believed that appellant was close enough to shoot her.

Collins then drove to Haskins's house, and Haskins came out to the porch. Green, again trying to communicate that something was wrong, asked for the money and attempted to point her eyes toward appellant. Haskins again said that she did not have any money and asked Green if everything was all right. When Green said yes, Haskins told Green that she did not have to go anywhere with anyone if she did not want to do so.

Green then used Haskins's cordless phone to try to call others whom she could ask for money: first calling a friend, who had no money, and then her mother. Green thought that if anyone would be able to recognize that something was wrong, it would be her mother. Green's mother agreed to meet them at a location that was on her way to work at Holly Manor. Collins drove the group there. While waiting, Green saw her aunt drive past and believed that her mother may be in the car. When Green turned out to be wrong, appellant ordered Collins to drive to Holly Manor. After Green's mother arrived, Green attempted to get out of the car and go to her mother, but appellant told her to wait for her mother to come to them. Green explained that her mother would not do that, and appellant allowed her to get out of the car but ordered her to be quick.

Green approached her mother and immediately told her that appellant had a gun and had demanded money from her. Green asked her mother for the money. As Green's mother was counting money, one of her mother's co-workers arrived and approached the Greens. Green's mother asked the co-worker if she could use her cell phone and called 911. Green's mother then told her daughter to take her hand and run into Holly Manor at her signal, which they did.

Farmville police responded, and Green and her mother went directly to the Prince Edward County Sheriff's Office to file a report. Investigator David Wilmoth confirmed that

appellant owned a black .380 caliber semiautomatic handgun matching the description given by the victims. He recovered the gun from appellant's home, and appellant admitted the gun was hers.

Appellant was tried on two counts of abduction of Green and Jordan, two counts of attempted robbery of Green and Jordan, two counts of use of a firearm during these abductions, and two counts of use of a firearm during these attempted robberies. At her jury trial, appellant took the stand in her own defense. She admitted that she had been gambling with Green and that a dispute had arisen over how much money Green owed appellant. She also testified that Green gave her $100 at the trailer. Appellant told the jury that they rode around Farmville for two hours in an attempt to collect the remaining $200 that she claimed Green owed her. Appellant also admitted that the gun entered into evidence was hers but denied having had it with her on the night in question. She also denied holding anyone against his or her will that night. Appellant said that she did all of this because the money was rightfully hers, not because she needed it. The jury then convicted appellant of abduction of Green and use of a firearm during the abduction of Green. The jury found appellant not guilty of the remaining charges.

## II. ANALYSIS

### A. ISSUES NOT PROPERLY BEFORE THIS COURT

#### 1. BARRED BY RULE 5A:12(c)

"Only questions presented in the petition for appeal will be noticed by the Court of Appeals." Rule 5A:12(c). This rule is a non-jurisdictional rule, and as such, invoking the rule "to prevent consideration of [an appeal's] merits, should not be undertaken without considering whether a party's failure to adhere strictly to the rule's requirements is insignificant, or so substantial as to preclude the court's addressing the merits of the case." Moore v. Commonwealth, 276 Va. 747, 753, 668 S.E.2d 150, 153-54 (2008) (citing Jay v.

Commonwealth, 275 Va. 510, 520, 659 S.E.2d 311, 317 (2008)).  Here, appellant framed her question presented as "[w]as it error for the trial court to allow the jury verdict to stand given that the verdict was contrary to the law and there was inadequate sufficiency of the evidence to find the appellant guilty as charged beyond a reasonable doubt?"  This question does not incorporate the issue that appellant raised in her brief (i.e., that the jury reached inconsistent verdicts).  We find that appellant's failure to comport with Rule 5A:12(c) is so significant as to preclude this Court from addressing the issue on the merits.

## 2.  BARRED BY RULE 5A:18

"No ruling of the trial court . . . will be considered as a basis for reversal unless the objection was stated together with the grounds therefor at the time of the ruling, except for good cause shown or to enable the Court of Appeals to attain the ends of justice."  Rule 5A:18.  We have repeatedly stated that the purpose of "'Rule 5A:18 is to alert the trial judge to possible error so that the judge may consider the issue intelligently and take any corrective actions necessary to avoid unnecessary appeals, reversals and mistrials.'"  Neal v. Commonwealth, 15 Va. App. 416, 422, 425 S.E.2d 521, 525 (1992) (quoting Martin v. Commonwealth, 13 Va. App. 524, 530, 414 S.E.2d 401, 404 (1992)).  Therefore, the argument must be made to the trial court with some specificity.  Mounce v. Commonwealth, 4 Va. App. 433, 435, 357 S.E.2d 742, 744 (1987).  "Making one specific argument on an issue does not preserve a separate legal point on the same issue."  Edwards v. Commonwealth, 41 Va. App. 752, 760-61, 589 S.E.2d 444, 448 (2003).

In her closing argument to the jury, appellant argued that there could be no abduction because Green proposed the trip around Farmville and both Green and Jordan willingly went with her.  To preserve an objection to the sufficiency of the evidence in a jury trial, the defendant must make a motion to strike the evidence at the conclusion of all the evidence or a motion to set aside the verdict after the jury has returned its verdict.  Shelton v. Commonwealth, 274 Va. 121,

127, 645 S.E.2d 914, 917 (2007). "[I]n a jury trial, the closing argument is addressed to the jury, not the trial judge, and does not require the trial judge to rule on the evidence as a matter of law. Only a motion to strike the evidence accomplishes that objective in a jury trial." Campbell v. Commonwealth, 12 Va. App. 476, 481, 405 S.E.2d 1, 3 (1991) (en banc). Appellant did not raise this specific argument in her renewed motion to strike at the conclusion of the evidence. Moreover, in her motion to set aside the jury's verdict, appellant incorporated only the argument to the jury regarding abduction for pecuniary benefit. Thus, the argument regarding the victims being willing companions is not preserved and we decline to consider it.

### 3. BARRED BY RULE 5A:20(e)

Rule 5A:20(e) provides that "[t]he opening brief of the appellant shall contain . . . [t]he principles of law, the argument, and the authorities relating to each question presented," and they "shall be stated in one place and not scattered through the brief." In several places throughout her brief, divorced from any law, argument or authority, Brown states that the evidence was insufficient to prove abduction to extort money for pecuniary gain because she demanded money that she believed belonged to her. Specifically, Brown asserts that "she just wanted her money owed to her from a good faith obligation[,]" "nothing more and nothing less."

Though Brown preserved her argument that the evidence was insufficient to prove abduction for pecuniary gain in the trial court, Brown still fails to comport with Rule 5A:20(e) and, in so doing, precludes our review of the question.

> "A court of review is entitled to have the issues clearly defined and to be cited pertinent authority. The appellate court is not a depository in which the appellant may dump the burden of argument and research. To ignore such a rule by addressing the case on the merits would require this court to be an advocate for, as well as the judge of the correctness of, [appellant's] position on the issues he raises. On the other hand, strict compliance with the rules permits a reviewing court to ascertain the integrity of the parties' assertions[,] which is essential to an accurate determination of the issues raised on appeal."

Jones v. Commonwealth, 51 Va. App. 730, 734-35, 660 S.E.2d 343, 345 (2007) (quoting People v. Trimble, 537 N.E.2d 363, 364 (Ill. App. Ct. 1989)). "'Statements unsupported by argument, authority, or citations to the record do not merit appellate consideration.'" Epps v. Commonwealth, 47 Va. App. 687, 718, 626 S.E.2d 912, 926-27 (2006) (en banc) (quoting Buchanan v. Buchanan, 14 Va. App. 53, 56, 415 S.E.2d 237, 239 (1992)). Here, appellant asserted that the evidence was insufficient to prove abduction to extort money for pecuniary gain because she demanded money that she believed belonged to her. Appellant failed to cite any authority in support of this argument. See Rule 5A:20(e). Therefore, we decline to consider this issue. Moreover, as stated hereinafter, viewing the evidence in the light most favorable to the Commonwealth, we can infer that the jury rejected Brown's argument that she was owed all of the money that she was demanding.

### B.  ISSUE PROPERLY BEFORE THIS COURT

Finally, appellant argues that the evidence was insufficient to support her convictions for abduction for pecuniary gain and use of the firearm during that abduction because the testimony from the Commonwealth's witnesses was inherently incredible.

> Where the sufficiency of the evidence is challenged after conviction, it is our duty to consider it in the light most favorable to the Commonwealth and give it all reasonable inferences fairly deducible therefrom. We should affirm the judgment unless it appears from the evidence that the judgment is plainly wrong or without evidence to support it.

Higginbotham v. Commonwealth, 216 Va. 349, 352, 218 S.E.2d 534, 537 (1975) (citations omitted).

> When weighing the evidence, the fact finder is not required to accept entirely either the Commonwealth's or the defendant's account of the facts. Barrett v. Commonwealth, 231 Va. 102, 107, 341 S.E.2d 190, 193 (1986). Similarly, the fact finder is not required to believe all aspects of a defendant's statement or testimony; the judge or jury may reject that which it finds implausible, but accept other parts which it finds to be believable.

> Durham v. Commonwealth, 214 Va. 166, 169, 198 S.E.2d 603, 606
> (1973). Thus, the jury was entitled to accept only those parts of
> [witnesses'] version[s] . . . which they found to be plausible and
> credible.

Pugliese v. Commonwealth, 16 Va. App. 82, 92, 428 S.E.2d 16, 24 (1993). "The jury's finding may only be disturbed on appeal if this Court finds that [the victim's] testimony was 'inherently incredible, or so contrary to human experience as to render it unworthy of belief.'" Robertson v. Commonwealth, 12 Va. App. 854, 858, 406 S.E.2d 417, 419 (1991) (quoting Fisher v. Commonwealth, 228 Va. 296, 299-300, 321 S.E.2d 202, 204 (1984)); see Willis & Bell v. Commonwealth, 218 Va. 560, 563-64, 238 S.E.2d 811, 813 (1977).

Here, the jury, as it was entitled to do, ostensibly disregarded some of the testimony from the Commonwealth's witnesses. That said, the jury convicted appellant of abduction of Green for pecuniary gain and use of a firearm during the commission of this abduction. The evidence, when viewed in the light most favorable to the Commonwealth, supports these verdicts.

After a dispute over money, appellant pointed a handgun at Green and demanded money. Green's boyfriend, Jordan, gave appellant $100 after an initial attempt to obtain money from Green's brother failed. Over the course of the next two hours, appellant accompanied Green to numerous locations in Farmville in an attempt to obtain more money. During this time, appellant took steps to disguise Collins's cell phone number when ordering Green to call potential sources of money. All of this occurred while appellant displayed her .380 caliber semiautomatic handgun. Moreover, numerous witnesses testified on behalf of the Commonwealth confirming Green's allegations. Thus, it cannot be said that the jury's verdict is plainly wrong or without evidence to support it.

## III. CONCLUSION

For the foregoing reasons, we decline to consider appellant's argument that the jury reached inconsistent verdicts because she violated Rule 5A:12(c) by not including this issue in her questions presented to our Court. We also determine that appellant's "willing companions" argument was not preserved, and we decline to consider it. We further hold that although appellant preserved her pecuniary gain argument in her argument to the trial court, her brief violated Rule 5A:20(e) by failing to support her argument with legal authority, and, therefore, we decline to consider it. Finally, we hold that appellant's argument that the Commonwealth's witnesses are incredible is without merit because the jury's verdict is not plainly wrong or without evidence to support it. Thus, we affirm appellant's convictions for abduction to extort money for pecuniary benefit and use of a firearm during the commission of a felony.

Affirmed.